UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

BEN THOMAS,

    Plaintiff,

v.                                                     Case No. 5:17cv173-CJK

NANCY A. BERRYHILL, Acting
Commissioner of Social Security,

    Defendant.
_____/

## MEMORANDUM ORDER

This case is before the court pursuant to 42 U.S.C. § 1383(c)(3) for review of the final determination of the Commissioner of Social Security ("Commissioner") denying Ben Thomas's application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 1381-83. The parties consented to Magistrate Judge jurisdiction pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73 for all proceedings in this case, including entry of final judgment. Upon review of the record before the court, I conclude the findings of fact and determinations of the Commissioner are supported by substantial evidence. The decision of the Commissioner, therefore, will be affirmed and the application for SSI denied.

## ISSUES ON REVIEW

Mr. Thomas, who will be referred to as claimant, plaintiff, or by name, argues: (1) the ALJ's residual functional capacity ("RFC") assessment is inconsistent with the step-two finding concerning plaintiff's severe impairments; (2) the ALJ erred by failing to find uncontrolled hypertension, anxiety, and headaches were severe impairments; and (3) the ALJ erred by failing to properly evaluate plaintiff's complaints of pain.[1] (Doc. 12).

## PROCEDURAL HISTORY

On November 18, 2013, plaintiff filed an application for SSI, claiming disability beginning October 25, 2013, due to spine problems and congestive heart failure. T. 88.[2] The Commissioner denied the applications initially and on reconsideration. T. 98, 112. After a hearing on January 19, 2016, the ALJ found claimant not disabled under the Act. T. 26-32. The Appeals Council denied a request for further review and, as a result, the ALJ's decision became the final

---

[1] The court instructed plaintiff that his "memorandum shall, at its outset, specifically identify each issue advanced." (Doc. 11, p. 2). Nevertheless, plaintiff did not identify the issues until the third page of the memorandum. (Doc. 12, p. 3); *cf.* Fed. R. App. P. 28 (providing that an appellate brief shall contain a statement of the issues presented for review before a description of the facts and procedural history). A very good reason exists for these requirements, in that the reviewing court will read the factual and procedural history in light of the issues actually raised.

[2] The administrative record filed by the Commissioner consists of 17 volumes (docs. 10-2 through 10-18) and has 845 consecutively-numbered pages. References to the record will be by "T.," for transcript, followed by the page number.

determination of the Commissioner. T. 1-3. The Commissioner's determination is now before the court for review.

## STANDARD OF REVIEW

A federal court reviews the "Commissioner's decision to determine if it is supported by substantial evidence and based upon proper legal standards." *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997); *see also Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991) ("[T]his Court may reverse the decision of the [Commissioner] only when convinced that it is not supported by substantial evidence or that proper legal standards were not applied."). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (*quoting Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (*quoting Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987)). "Even if the evidence preponderates against the [Commissioner], [the court] must affirm if the decision is supported by substantial evidence." *Sewell v. Bowen*, 792 F.2d 1065, 1067 (11th Cir. 1986).

When reviewing a Social Security disability case, the court "'may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner.]'" *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)

(*quoting Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)); *see also Hunter v. Soc. Sec. Admin., Comm'r*, 808 F.3d 818, 822 (11th Cir. 2015) ("In determining whether substantial evidence supports a decision, we give great deference to the ALJ's factfindings.") (*citing Black Diamond Coal Min. Co. v. Dir., OWCP*, 95 F.3d 1079, 1082 (11th Cir. 1996)). The reviewing court, however, may not look "only to those parts of the record which support the ALJ[,]" but instead "must view the entire record and take account of evidence in the record which detracts from the evidence relied on by the ALJ." *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983). Review is deferential to a point, but the reviewing court conducts what has been referred to as "an independent review of the record." *Flynn v. Heckler*, 768 F.2d 1273, 1273 (11th Cir. 1985).

The Social Security Act defines disability as an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). To qualify as a disability, the physical or mental impairment must be so severe the plaintiff not only is unable to do his previous work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id.* § 1382c(a)(3)(B).

Pursuant to 20 C.F.R. § 416.920(a)(4), the Commissioner analyzes a disability claim in five steps:

1. If the claimant is performing substantial gainful activity, he is not disabled.

2. If the claimant is not performing substantial gainful activity, his impairments must be severe before he can be found disabled.

3. If the claimant is not performing substantial gainful activity and he has severe impairments that have lasted or are expected to last for a continuous period of at least 12 months, and if his impairments meet or medically equal the criteria of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, the claimant is presumed disabled without further inquiry.

4. If the claimant's impairments do not prevent him from performing his past relevant work, he is not disabled.[3]

5. Even if the claimant's impairments prevent him from performing his past relevant work, if other jobs exist in significant numbers in the national economy that accommodate the claimant's RFC and vocational factors, he is not disabled.

---

[3] "[C]laimant bears the initial burden of establishing a severe impairment that keeps him from performing his past work." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).

## FINDINGS OF THE ALJ

In her written decision, the ALJ made several findings relative to the issues raised in this appeal:

• Claimant has not engaged in substantial gainful activity since November 18, 2013, the application date. T. 28.

• Claimant has the following severe impairments: degenerative disc disease, congestive heart failure, chronic kidney disease, the residual effects of a gun-shot wound to the left foot, and obesity. T. 28.

• Claimant has the RFC to perform the full range of light work as defined in 20 C.F.R. § 416.967(b). T. 30.

• Claimant has not been under a disability, as defined in the Act, from November 18, 2013, the date the application was filed, to May 31, 2016, the date of the ALJ's decision. T. 32.

## FACT BACKGROUND AND MEDICAL HISTORY

At the January 2016 hearing, Mr. Thomas testified about his health, daily activities, and work history. Born on October 6, 1965, he completed high school. T. 36. He is 5'11" tall, and weighs about 300 pounds. T. 36. He previously worked as a maintenance worker at a baseball stadium and a construction laborer. T. 37, 49-50. He lives with his girlfriend in a house; he says pain makes it difficult for him to

move around the house, shower, cook, and complete chores. T. 38-39. Family members bring him food when he is unable to cook for himself. T. 39.

Plaintiff has been diagnosed with congestive heart failure, which causes an irregular heartbeat, shortness of breath, and fatigue. T. 39. When he stands for long periods, his legs and hands swell. T. 39. His heart medication causes his chest to tighten, which leads to difficulty breathing and panic attacks. T. 40, 45. The panic attacks occur "14 to 15 times" a month and "normally" last half the day. T. 40. His medication also makes it difficult to focus and pay attention "because [he] fall[s] asleep a lot of [the] time[.]" T. 40.

Plaintiff testified his hypertension has been "uncontrollable" and resulted in headaches "at least twice a week" that last half the day. T. 40-41. To cope with the headaches, claimant takes pain medication and "sit[s] around" to relax. T. 41.

At the end of 2013, claimant's "kidneys started hurting . . . real, real bad." T. 42. After a doctor changed Mr. Thomas's blood pressure medication, his "kidneys started feeling a lot better." T. 42. Later, however, the kidney problems returned. T. 42-43. Due to kidney disease, plaintiff says his kidneys hurt and his legs swell with fluid. T. 41. It also causes him to use the bathroom at least four times a night, which interrupts his sleep and leaves him tired. T. 41.

As part of the disability application process, Cristina Rodriguez, M.D., reviewed Mr. Thomas's medical records and offered an opinion as to his functional

move around the house, shower, cook, and complete chores. T. 38-39. Family members bring him food when he is unable to cook for himself. T. 39.

Plaintiff has been diagnosed with congestive heart failure, which causes an irregular heartbeat, shortness of breath, and fatigue. T. 39. When he stands for long periods, his legs and hands swell. T. 39. His heart medication causes his chest to tighten, which leads to difficulty breathing and panic attacks. T. 40, 45. The panic attacks occur "14 to 15 times" a month and "normally" last half the day. T. 40. His medication also makes it difficult to focus and pay attention "because [he] fall[s] asleep a lot of [the] time[.]" T. 40.

Plaintiff testified his hypertension has been "uncontrollable" and resulted in headaches "at least twice a week" that last half the day. T. 40-41. To cope with the headaches, claimant takes pain medication and "sit[s] around" to relax. T. 41.

At the end of 2013, claimant's "kidneys started hurting . . . real, real bad." T. 42. After a doctor changed Mr. Thomas's blood pressure medication, his "kidneys started feeling a lot better." T. 42. Later, however, the kidney problems returned. T. 42-43. Due to kidney disease, plaintiff says his kidneys hurt and his legs swell with fluid. T. 41. It also causes him to use the bathroom at least four times a night, which interrupts his sleep and leaves him tired. T. 41.

As part of the disability application process, Cristina Rodriguez, M.D., reviewed Mr. Thomas's medical records and offered an opinion as to his functional

limitations. T. 109-10. On March 4, 2014, Dr. Rodriguez concluded plaintiff could occasionally lift 20 pounds, frequently lift 10 pounds, and stand and/or walk for about 6 hours in an 8-hour workday. T. 109.

## ANALYSIS

Residual Functional Capacity

Mr. Thomas first argues the ALJ's RFC assessment failed to account for limitations caused by the severe impairments the ALJ found at step two. (Doc. 12, p. 4-11). Specifically, plaintiff contends the ALJ erred by: (1) including "no limitations with regard to [plaintiff's] ability to stand, walk, or use foot controls, which would directly correspond to the severe impairments with [plaintiff's] heart, back, and left foot"; (2) not including limitations to account for the pain caused by the severe impairments, "despite finding a number of impairments that are reasonably expected to cause pain and, in fact, are documented to have done so"; and (3) not including limitations related to plaintiff's "ability to finger, feel, and manipulate with the left hand or reach with the left arm" due to evidence plaintiff's "cervical DDD has affected his ability to use his left hand and arm." (*Id.*, p. 8).

The ALJ's RFC assessment restricted claimant to light work. T. 30. Light work: (1) "requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday"; and (2) requires "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." SSR

83-10. Thus, plaintiff's assertion that the ALJ included "no limitations" regarding plaintiff's ability to stand or walk is incorrect. Moreover, Mr. Thomas has not cited any evidence in the record suggesting he had additional functional limitations related to his ability to stand, walk, or use foot controls.[4] *See Moore v. Barnhart*, 405 F.3d 1208, 1213 n.6 (11th Cir. 2005) ("the mere existence of . . . impairments does not reveal the extent to which they limit [the] ability to work or undermine the ALJ's determination in that regard"). Plaintiff cannot establish reversible error through his speculation, or unsupported conclusions, regarding limitations that might be caused by his impairments.

With respect to pain-related limitations, the ALJ noted plaintiff's physical impairments "could reasonably be expected to cause the alleged symptoms" but his "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in [the ALJ's] decision." T. 30. The ALJ, therefore, found Mr. Thomas's subjective complaints of disabling pain not entirely credible and concluded he could perform light work despite those complaints. And, as discussed below, the ALJ's credibility determination is supported by substantial evidence.

---

[4] The court's briefing order mandated that plaintiff "specifically cite the record, as filed by the Commissioner, by page number for factual contentions." (Doc. 11, p. 2). As with the statement of issues, this requirement is rooted in judicial efficiency.

Claimant's argument regarding the omission of work restrictions related to his left arm or hand is also unavailing. The only evidence plaintiff cites to support the inclusion of such restrictions comes from an emergency room visit seven days after a car accident. T. 339, 343. The visit occurred on August 13, 2012, over a year before the alleged disability onset date, and diagnostic imaging of the cervical spine was within normal limits. T. 342-43. More recent records do not show left-arm numbness, T. 449, 498, and claimant did not testify he experienced left-arm limitations at the January 2016 hearing. Substantial evidence, therefore, supports the ALJ's decision not to include left-arm restrictions in the RFC.

Mr. Thomas also takes issue with the ALJ's reliance on the opinion of Dr. Rodriguez, the non-examining physician. (Doc. 12, p. 9-10). The ALJ gave Dr. Rodriguez's opinion significant weight, finding it generally consistent with the treatment records. T. 31; see 20 C.F.R. § 416.913a(b)(1) ("State agency medical . . . consultants are highly qualified and experts in Social Security disability evaluation."). Because Dr. Rodriguez's opinion is dated March 4, 2014, plaintiff argues Rodriguez did not review the entire medical record. Claimant, however, has not identified any evidence post-dating the opinion which might undermine Dr. Rodriguez's findings.

Plaintiff also incorrectly asserts Dr. Rodriguez did not consider his chronic kidney disease, the residual effects of the gunshot wound to the left foot, and obesity.

In fact, Dr. Rodriguez specifically referenced the 2010 gunshot wound and obesity. T. 109-10. And Dr. Rodriguez reviewed records from December 2013, which included glomerular filtration rate test results indicative of chronic kidney disease. T. 110, 457-58. Thus, although Dr. Rodriguez did not review the entire record, her opinion supports the ALJ's RFC determination and the ALJ did not err by relying on it.

Severe Impairments

Next, Mr. Thomas argues the ALJ erred by failing to find anxiety, headaches, and uncontrolled hypertension were severe impairments. (Doc. 12, p. 11-13). An impairment is "severe" if it "significantly limits claimant's physical or mental ability to do basic work activities." *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997) (*citing* 20 C.F.R. § 416.920(c)). Because the ALJ found at least one severe impairment, however, the ALJ's failure to designate additional conditions as severe does not necessarily constitute reversible error. *See Heatly v. Comm'r of Soc. Sec.*, 382 F. App'x 823, 825 (11th Cir. 2010) ("Nothing requires that the ALJ must identify, at step two, all of the impairments that should be considered severe."). "Instead, at step three, the ALJ is required to demonstrate that it has considered all of the claimant's impairments, whether severe or not, in combination." *Id.*; *see also Ball v. Comm'r of Soc. Sec. Admin.*, 714 F. App'x 991, 993 (11th Cir. 2018) ("[S]tep two of the test 'acts as a filter' in that the 'finding of any severe impairment . . . is

enough to satisfy the requirement of step two' and allow the ALJ to proceed to step three.") (*quoting Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987)); SSR 96-8p ("In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.' While a 'not severe' impairment(s) standing alone may not significantly limit an individual's ability to do basic work activities, it may—when considered with limitations or restrictions due to other impairments—be critical to the outcome of a claim.").

Noting his complaints of headaches and hypertension at the hearing, plaintiff complains the ALJ failed to discuss either condition in her decision. Nevertheless, the ALJ's failure to expressly mention headaches or hypertension does not constitute reversible error because: (1) the ALJ found claimant's subjective complaints not entirely credible; and (2) the medical evidence does not indicate the conditions caused work-related functional limitations.

Plaintiff presented to the emergency room of Jackson Hospital complaining of a headache on August 20, 2012, but he received medication and was discharged after a couple of hours in "good and stable" condition. T. 345-50. Furthermore, the visit occurred over a year before the alleged disability onset date.

In addition, medical evidence contradicted plaintiff's testimony that he had headaches that lasted half a day at least twice a week. T. 41. Treatment notes from

April 16, April 25, July 18, and September 19 of 2015 revealed "[w]ithin the last 30 days, [claimant] has not experienced any . . . headaches[.]" T. 629, 643, 690, 695, 705. On January 26, 2016, Dr. Hari Kolli noted "no headache." T. 776. The medical records, therefore, contradict plaintiff's testimony and support the ALJ's decision not to impose functional limitations due to headaches.

With respect to hypertension, plaintiff cites three instances when a physician's assistant diagnosed uncontrolled hypertension. T. 427-28, 504. Under the regulations governing plaintiff's claim, however, a physician's assistant is not an acceptable medical source capable of establishing the existence of a medically-determinable impairment. *See Zawatsky v. Comm'r of Soc. Sec.*, No. 6:13-cv-1976-Orl-18DAB, 2015 WL 179284 (M.D. Fla. Jan. 14, 2015) ("Under the regulations, evidence from nurses, physician's assistants, and other non-acceptable medical sources cannot establish the existence of a medically determinable impairment, but an ALJ can use evidence from these other sources to show the severity of a claimant's impairments and how the claimant's impairments affects the claimant's ability to work.").

Assuming the validity of the hypertension diagnoses, however, "the mere existence of . . . impairments does not reveal the extent to which they limit [the] ability to work[.]" *Moore*, 405 F.3d at 1213 n.6. The physician assistant's notes indicate Mr. Thomas reported dizziness in December 2013. T. 428. The next month,

however, he reported "no more dizziness." T. 427. Likewise, he did not complain of dizziness in June 2014. T. 504.

On March 6, 2015, Mr. Thomas presented to the Jackson Hospital emergency room with a complaint of hypertension. T. 619. The treatment note, however, shows "[t]he severity of the symptoms was mild[,]" with "no associated nausea, vomiting, abdominal pain, chest pain, confusion, headache, hematuria, palpitations, seizure, or [shortness of breath]." T. 619. Plaintiff was diagnosed with "benign essential hypertension" and prescribed Norvasc. T. 621. On September 20, 2015, Mr. Thomas reported he had been "on Norvasc 10 for the last several months" and "it's doing fairly well [for] his blood pressure[.]" T. 677. On January 26, 2016, Dr. Kolli concluded claimant's hypertension was "stable." T. 777.

The medical evidence, therefore, contradicts plaintiff's testimony that he suffered from uncontrolled hypertension. And the evidence does not suggest the hypertension caused any work-related functional limitations. Thus, the ALJ did not commit reversible error by failing to designate "uncontrolled hypertension" as a severe impairment or include limitations in the RFC related to the condition.

Plaintiff also asserts the ALJ should have identified anxiety as a severe impairment. The ALJ noted plaintiff complained of anxiety, but concluded the evidence did not establish a medically-determinable mental impairment that met the durational requirement of the Act because "there are only occasional brief references

to . . . anxiety in the treatment records and no evidence of significant limitations on any sustained basis." T. 29.

As the ALJ noted, the record contains references to anxiety. On June 28, 2014, Mr. Thomas visited the emergency room with chest pain. T. 548. The treatment notes from the visit reflect he was "positive for anxiety" and received Ativan. T. 551, 555. On October 28, 2014, a provider at the Faith Health Clinic diagnosed severe anxiety and prescribed Celexa. T. 584. In March 2015, plaintiff again presented to the emergency room with chest pain; the doctor concluded it was anxiety-related and prescribed Xanax. T. 612, 616.[5] On December 21, 2015, plaintiff visited Everest Medical Care for a sleep study consult and reported he experienced anxiety. T. 766.

Nevertheless, the ALJ did not err by concluding the record contained "no evidence of significant limitations [from anxiety] on any sustained basis." The evidence cited by plaintiff shows he received treatment for anxiety on three occasions from June 28, 2014, to March 5, 2015; the remainder of the evidence claimant cites merely indicates he reported anxiety or was noted as having a history of anxiety. T. 512, 524, 585, 717, 727, 766. This limited treatment history supports the ALJ's assessment of the effect of claimant's anxiety. *See Beegle v. Soc. Sec.*

---

[5] Plaintiff cites an additional visit to Dr. Andreas Muench on October 20, 2015. T. 717. Records from the visit show anxiety was circled on a "problem list," which does not necessarily indicate plaintiff experienced anxiety-related symptoms at the time.

*Admin., Comm'r*, 482 F. App'x 483, 487 (11th Cir. 2012) (citations omitted) ("When evaluating a claimant's statements regarding his symptoms and their functional effects, the ALJ may consider whether the level or frequency of treatment is consistent with the level of complaints.") (*citing* S.S.R. 96-7p at *7).

Furthermore, other parts of the record indicate anxiety did not cause functional limitations. Treating providers at Jackson Hospital found plaintiff "negative for anxiety" in August 2012, November 2012, November 2013, December 2013, April 2015, and July 2015. T. 348, 449, 463, 479, 633, 647, 709. On June 24, 2014, and April 25 and September 20 of 2015, Mr. Thomas denied "any psychiatric problems." T. 498, 624, 677. Thus, the ALJ's determination that plaintiff did not suffer from anxiety-related work limitations is supported by substantial evidence.

Credibility

Finally**,** Mr. Thomas argues the ALJ failed to properly evaluate his complaints of pain. "Pain alone can be disabling, even when its existence is unsupported by objective evidence." *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992) (*citing Walker v. Bowen*, 826 F.2d 996, 1003 (11th Cir. 1987)). The Eleventh Circuit "has established a three part 'pain standard' that applies when a claimant attempts to establish disability through his . . . own testimony of pain or other subjective symptoms." *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991); *see also Stewart v. Astrue*, 551 F. Supp. 2d 1308, 1319 (N.D. Fla. 2008) ("Pain and other symptoms

reasonably attributed to a medically determinable impairment are relevant evidence for determining residual functional capacity.") (*citing* SSR 96-8p). "The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." *Holt*, 921 F.2d at 1223 (*citing Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986)). "The standard also applies to complaints of subjective conditions other than pain." *Id.* (*citing Jackson v. Bowen*, 873 F.2d 1111, 1114 (8th Cir. 1989)). "[T]he ALJ must clearly 'articulate explicit and adequate reasons' for discrediting the claimant's allegations of completely disabling symptoms." *Dyer*, 395 F.3d at 1210 (*quoting Foote v. Chater*, 67 F.3d 1553, 1561-62 (11th Cir. 1995)). And of course, the reasons articulated for disregarding the plaintiff's subjective testimony must be based on substantial evidence. *See Jones v. Dep't of Health & Human Servs.*, 941 F.2d 1529, 1532 (11th Cir. 1991).

Here, the ALJ concluded plaintiff's physical impairments "could reasonably be expected to cause the alleged symptoms" but his "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in [the ALJ's] decision." T. 30.

First, the ALJ found the objective findings did not support the severity of plaintiff's subjective complaints and identified parts of the record supporting that conclusion. T. 30. The evidence cited by the ALJ included: (1) an unremarkable June 2014 musculoskeletal examination, conducted during plaintiff's visit to the emergency room for back pain, T. 500; (2) an unremarkable August 2014 physical examination, T. 653; (3) July 2015 diagnostic imaging of the lumbar spine showing "no abnormalities," T. 712; (4) treatment notes from September 20, 2015, in which plaintiff denied any musculoskeletal problems, T. 677; and (5) a physical examination by Dr. Kolli in January 2016 which elicited "no tenderness" and showed "no musculoskeletal swelling," T. 777. These medical records support the ALJ's determination that plaintiff's allegations are not entirely credible. *See* 20 C.F.R. § 404.1529(c)(2) ("Objective medical evidence . . . is a useful indicator to assist us in making reasonable conclusions about the intensity and persistence of your symptoms and the effect those symptoms, such as pain, may have on your ability to work.").

In addition, the ALJ also found claimant "admitted to engaging in activities that contradict[ed] his testimony." T. 30-31. As an example, the ALJ noted plaintiff "admitted to Dr. Kolli that he continued to work out and was capable of 25 push-ups without stopping." T. 31, 775. The ability to perform 25 push-ups at one time is not consistent with claimant's assertion that he suffers from disabling pain and "get[s]

tired real fast." T. 39; *see Macia v. Bowen*, 829 F.2d 1009, 1012 (11th Cir. 1987) ("The regulations do not . . . prevent the ALJ from considering daily activities at the fourth step of the sequential evaluation process."). Plaintiff's admission that he is capable of vigorous exercise, and the benign objective findings, provide substantial evidence supporting the ALJ's credibility determination. *See Lara v. Comm'r of Soc. Sec.*, 705 F. App'x 804, 814 (11th Cir. 2017) (holding "substantial evidence supports the ALJ's determination that Lara's statements about her symptoms were not credible because those statements were inconsistent with the medical evidence in this case and because she had given inconsistent statements throughout the record"); *Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 939 (11th Cir. 2011) ("The question is not . . . whether ALJ could have reasonably credited [claimant's] testimony, but whether the ALJ was clearly wrong to discredit it.").

Accordingly, it is ORDERED:

1. The decision of the Commissioner is AFFIRMED and plaintiff's applications for Supplemental Security Income are DENIED.

2. The clerk is directed to enter judgment in favor of the Commissioner and close the file.

DONE AND ORDERED this 21st day of September, 2018.

*/s/* *Charles J. Kahn, Jr.*
**CHARLES J. KAHN, JR.**
**UNITED STATES MAGISTRATE JUDGE**